IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON T. GROBMAN, F-91808,<br>　　　　Petitioner,<br>　vs.<br>B. M. CASH, Acting Warden,<br>　　　　Respondent. | No. C 10-03785 CRB (PR)<br><br>ORDER DENYING PETITION<br>FOR A WRIT OF HABEAS<br>CORPUS |

Petitioner, a state prisoner incarcerated at California State Prison, Los Angeles County, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his state sentence. For the reasons that follow, a writ is denied.

**PROCEDURAL BACKGROUND**

On November 22, 2006, Petitioner was charged in Santa Clara County Superior Court with possession of methamphetamine (count one); receiving stolen property (counts two and six); being under the influence of methamphetamine, a misdemeanor (count three); first-degree burglary (counts four, five, eleven and twelve); vehicle theft with a prior conviction (count seven); receiving a stolen vehicle with a prior conviction (count eight); hit and run driving causing property damage, a misdemeanor (count nine); and resisting, delaying or obstructing an officer, a misdemeanor (count ten). The information filed by the district attorney also alleged that Petitioner had four prior violent or serious felony convictions qualifying as strikes under California's Three Strikes Law, two prior serious felony convictions and had served two prior prison terms.

1   On February 8, 2007, Petitioner pled guilty to all nine felony counts and admitted the four prior strike convictions listed in the information. The trial court denied Petitioner's motion to strike his prior convictions and, on September 21, 2007, sentenced him to an indeterminate prison term of 150 years to life consecutive to a determinate term of 40 years.

Petitioner appealed his sentence on the grounds that the trial court: (1) mis-characterized the prior strike convictions and current crimes as "violent" felonies; (2) improperly concluded that it had no discretion to dismiss the prior strike convictions; and (3) failed to consider his background as a victim of sexual abuse in determining whether to strike the prior convictions. On February 4, 2009, the California Court of Appeal affirmed the trial court's judgment and, on May 13, 2009, the California Supreme Court denied review.

Over a year later, Petitioner began seeking habeas corpus relief from the California courts on additional grounds and, on August 25, 2010, filed a protective federal habeas petition in this court. He then obtained a stay of his federal habeas proceedings until the California Supreme Court denied his final state petition on timeliness grounds on April 27, 2011. Petitioner promptly filed an amended federal petition on May 19, 2011.

On May 31, 2011, this Court found that the amended petition stated cognizable federal claims for relief under 28 U.S.C. § 2254, when liberally construed, and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer on July 25, 2011 and Petitioner filed a traverse on August 11, 2011.

## FACTUAL BACKGROUND

The facts described in the probation officer's report are as follows:

**Counts One and Two**

On October 6, 2004, San Jose police officers arrived at the defendant's motel room and attempted to gain entry. Officers were able to partially open the door, however, a security bar prevented the door from opening all the way. Inside the room officers observed the defendant run towards the rear of the motel room. Once officers gained entry, they discovered .47 grams net weight of methamphetamine. Inside the defendant's wallet officers discovered a credit card belonging to the victim, William Jubb. According to William Jubb, he hired the defendant to complete some work around his place and noticed that some of his

2

mail had been missing. One article of mail that was missing was the credit card found in the defendant's possession. When William Jubb contacted the credit card company he was notified the card had been activated from his home telephone and charges had been made. He stated he did not give the defendant permission to activate, possess or make any transactions on the credit card.

**Count Four**

On December 13, 2005, sheriff's deputies were dispatched to the residence of victim Isabel Brown on a report of a prior burglary. Upon arrival the victim stated she was out Christmas shopping when she received a telephone call from her husband stating they had been burglarized. Their computer printer was on the ground and several pieces of the victim's jewelry had been taken. Much of the jewelry taken was from Peru and had been inherited from the victim's grandmother. The approximate value of the jewelry was $80,000. It was later determined that the fingerprints taken from the scene matched those of the defendant. Items taken during the burglary included: 1 diamond ring, 2 Topaz stone rings, 1 wedding ring with a 5 diamond set, a bracelet set with earrings, a red ring, 3 sapphire rings, 5 pairs of gold earrings, 8 gold necklaces, 20 gold rings containing diamonds, a gold man's watch with a chain, a Garnet rock, 5 sterling silver chains, a diamond ring, a gold chain and cross and 30 silver rings.

**Count Five**

On December 16, 2005, sheriff's deputies were dispatched to victim, Kenneth Louth's residence on a report of a residential burglary. Upon arrival, the victim stated he had been out of town for three weeks and upon his return to his residence he realized it had been burglarized. The rear door had been pried open and a large portion of the wood framing had also been removed. The dead bolt on the door was also broken. Items taken from the residence included three computer monitors, one computer keyboard and one computer mouse. The total value of the property was $1,700. The defendant was later, in Count Six, found to be in possession of items taken during the burglary.

**Counts Six, Seven and Eight and Nine**

On December 30, 2005, at approximately 8:50 p.m. the defendant fled from a DUI checkpoint and eventually crashed through a cyclone fence. He was eventually arrested following a foot pursuit. It was determined the vehicle being driven by the defendant had previously been reported stolen. According to John Serrano, the owner of the stolen vehicle, the defendant was doing work for him around his house. The victim loaned his vehicle to the defendant to run an errand and the defendant disappeared. The victim loaned the defendant his vehicle five months prior to the instant offense.

A search of the vehicle revealed a driver's license and medical insurance card belonging to victim, Kenneth Louth as well as a check in the amount of $804.36 issued to the victim. Other items found in the vehicle included a check with the name of Larry Bonham, a social security card issued to Ethan Fernandez, a passport belonging to Larry Buckmaster and a passport belonging to Gil Fernandez.

**Count Eleven**

On October 19, 2005, San Jose police officers were dispatched to the residence of victim, Manual Fernandez, on a report of a residential burglary. Upon arrival, the victim advised officers that when he returned home he observed his garage door was open. When he entered the residence he saw that it had been ransacked. Items taken during the burglary included a computer, PSP system and game, shoes, a tool box, tools, two passports, a green card and a birth certificate. A surveillance camera located across from the victim's residence showed the defendant parked and exited his vehicle during the same time frame the burglary took place. The defendant was later found in possession of items taken during the burglary.

**Count Twelve**

On November 21, 2005, at approximately 4:10 p.m., San Jose police officers responded to Serguei Bobyr's residence on a report of a residential burglary. The victim reported he left his residence at approximately 10:00 a.m. and returned at approximately 4:00 p.m. Upon his return home, the victim noticed his garage door was open and the door casing around his front door was damaged. The victim's bicycle, tool box and tools were missing from his garage. On April 27, 2006, a search warrant was served at the residence the defendant was staying at during the commission of the offense. Inside the garage, officers located the victim's bicycle.

Clerk's Tr. at 202, 205-08.

The probation officer summarized petitioner's statement as follows:

The defendant was interviewed at the Elmwood Correctional Facility. He admitted involvement in all the listed offenses and explained his main motivation for committing the burglaries was to support his drug habit. The defendant would drive around residential areas and look for homes where it seemed no one was there. He would then proceed to knock on the door or ring the doorbell to ensure the residence was vacant. Once inside the defendant would take items and sell them in order to purchase drugs.

Id. at 209-10.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A court may grant a writ with respect to any claim adjudicated on the merits in state court only if the state court's adjudication of the claim:

(1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable</u>

4

1 <u>application</u> of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

3 (2) resulted in a decision that was based on an <u>unreasonable determination of the facts</u> in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphases added).

The Supreme Court elaborated on § 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). "Under the <u>'contrary to' clause</u>, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 412-13 (emphasis added). "Under the <u>'reasonable application clause,'</u> a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413 (emphasis added). "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411. Rather, the state court's application of the law must also be objectively unreasonable. <u>Id.</u> at 409.

A federal court will not review questions of federal law decided by a state court if the state decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991). A procedural default rule is an example of an "adequate and independent state ground" for denying habeas corpus relief. <u>Wells v. Maass</u>, 28 F.3d 1005, 1008 (9th Cir. 1994). If a federal court chooses to analyze the merits of a federal claim that a state court denied on grounds of procedural default, it must apply a de novo standard of review rather than the deferential standard of § 2254(d). See <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167-68 (9th Cir. 2002) (holding that deferential AEDPA standard of review does not apply where state courts never reached merits of habeas claim).

5

**DISCUSSION**

Petitioner seeks federal habeas corpus relief under § 2254 on the ground that his state sentence violates the Sixth and Fourteenth Amendments. Specifically, he claims that his sentence violates clearly established federal law as determined by the Supreme Court in Cunningham v. California, 549 U.S. 270 (2007), and Buford v. United States, 532 U.S. 59 (2001). Petitioner's claims are procedurally defaulted and, in any event, lack merit.

**A.    Procedural Default**

The California Supreme Court summarily denied Petitioner habeas relief on April 27, 2011, citing to In re Robbins, 18 Cal. 4th 770, 780 (1998). In Robbins, the California Supreme Court held that a California state court may dismiss a habeas petition as untimely if the petitioner substantially delayed in filing it. 18 Cal. 4th at 780. It retains discretion, however, to ignore the untimeliness of a petition and reach the merits. Id. at 778 n.1.

The record shows that Petitioner waited over a year after the California Supreme Court denied his direct appeal to seek habeas relief from the state courts. See Dkt. # 8-2, Exs. H-I. By citing to Robbins in its summary dismissal of Petitioner's state habeas petition, the California Supreme Court indicated that it was rejecting the petition as untimely. Respondent properly notes that this renders Petitioner's claims procedurally defaulted in federal court.

The Supreme Court of the United States has established rules governing the application of state procedural bars to federal habeas petitions: "[A] state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court has discretion to reach the merits despite the default." Walker v. Martin, 131 S. Ct. 1120, 1125 (2011). In Walker, the Supreme Court specifically upheld California's timeliness rule announced in Robbins as a proper procedural bar for federal habeas petitions. Id. at 1127-31.

A petitioner may surmount a proper procedural bar by showing either cause and prejudice or a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can

show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "To establish prejudice resulting from a procedural default, a habeas petitioner bears 'the burden of showing not merely that the errors at his trial constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension.'" White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989) (citing United States v. Frady, 456 U.S. 152, 170 (1982)).  To show that a failure to consider the merits of a claim would result in a fundamental miscarriage of justice, a petitioner must establish factual innocence.  See Gandarela v. Johnson, 286 F.3d 1080, 1085-86 (9th Cir. 2002); Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).  The burden of establishing cause and prejudice or a fundamental miscarriage of justice always rests with the petitioner.  White, 874 F.2d at 603; Wildman, 261 F.3d at 842-43.

Because California's timeliness rule is a valid procedural ground for precluding federal review of Petitioner's claims, this Court may only reach the merits of the claims if Petitioner shows cause and prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.  Petitioner has made no such showing.  The claims are procedurally defaulted and barred from federal review.

**B.     Merits**

Even if Petitioner's claims were not procedurally defaulted, they would fail on the merits. Petitioner claims that the state trial court unconstitutionally: (1) enhanced his sentence based on aggravating facts as determined by the court, depriving him of his right to a jury; and (2) failed to count three of the prior strike offenses as only one strike.  Petitioner's first claim fails because the trial court enhanced Petitioner's sentence not based on aggravating facts as determined by the judge, but rather based on prior jury-trial convictions.  Petitioner's second claim fails because each one of the prior strike offenses could be considered separate strikes without violating federal law.

**1.     Enhancement of Sentence & Cunningham**

Petitioner relies on Cunningham v. California, 549 U.S. 270 (2007), to argue that the state trial court deprived him of his right to a jury trial when it enhanced his sentence based on his recidivism. But Petitioner's reliance on Cunninghan is misplaced.

In Cunningham, the Supreme Court held that California's determinate sentencing law, which authorized a judge, rather than a jury, to find facts exposing defendant to an enhanced sentence, violated a defendant's right to trial by jury. 549 U.S. at 288-89. In arriving at this conclusion, the Court relied on its previous decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). Id. In Apprendi, the Court had held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Put simply, the Supreme Court has explicitly carved out an exception for prior convictions – a sentencing court may consider prior convictions for purposes of enhancing a sentence without having to submit them to a jury. See Keese v. Mendoza-Powers, 574 F.3d 675, 676-77 (9th Cir. 2009); see also United States v. Tighe, 266 F.3d.1187, 1194 (9th Cir. 2001) (Apprendi's "prior conviction" exception limited to prior convictions from proceedings that afforded procedural necessities of jury trial and proof beyond a reasonable doubt).

Here, the record shows that on February 8, 2007, Petitioner admitted that he had suffered four prior strike convictions for first degree burglary and indicated that he understood that the convictions qualified as strikes under California's Three Strikes Law. See Rep. Tr. at 13-15. Several months later at the sentencing hearing, the court denied Petitioner's motion to strike the priors and stated that it was enhancing Petitioner's sentence based on the prior strike convictions; the court mentioned no other aggravating factors. See id. at 22-28.

The record makes clear that the state trial court enhanced Petitioner's sentence based solely on his prior strike convictions, each of which resulted from a jury verdicts. The trial

1  court made no other factual findings that otherwise increased Petitioner's sentence.
2  Petitioner's enhanced sentence does not violate Cunningham because it falls under the prior
3  conviction exception.  See Cunningham, 549 U.S. at 288-89; Apprendi, 530 U.S. at 490;
4  Kessee, 574 F.3d at 676-77.  Petitioner is not entitled to federal habeas relief on his
5  Cunningham claim.

### 2. Consolidation of Priors & Buford

Petitioner claims that clearly established federal law, as determined by the Supreme Court in Buford v. United States, 532 U.S. 59 (2001), prohibited the state trial court from counting three of the four prior strike convictions listed in the information as separate strikes. Again, Petitioner's reliance on Supreme Court precedent is misplaced.

In Buford, the Supreme Court considered the United States Sentencing Guidelines' treatment of career offenders.  The guidelines define a "career offender" as a person with "at least two prior felony convictions" for violent or drug-related crimes.  532 U.S. at 60.  If two or more prior convictions are "related" to one another, then the guidelines require a federal sentencing court to consider them as a single conviction.  Id. at 60-61.  Buford further established that federal appellate courts must review district courts' "relatedness" determinations deferentially.  Id. at 66.

Petitioner's reliance on Buford is misplaced because Buford only applies to federal sentencing; Buford does not address whether multiple prior convictions consolidated into one information for sentencing can be treated as separate "strikes" under California state law.

Under California law, each prior conviction that properly qualifies as a "strike" under the Three Strikes Law may be treated as such; whether it was consolidated with other offenses for sentencing is irrelevant.  See People v. Cline, 60 Cal. App. 4th 1327, 1338-39 (1998).  For example, in Cline, a California appellate court upheld a trial court's determination that twelve burglaries that were consolidated into one sentencing proceeding constituted twelve separate strikes.  Id. at 1338-39.  The court rejected the defendant's contention that they should count

9

as only one strike because they were charged in a single information; California Supreme Court precedent firmly establishes that "prior strike felonies need not have been brought and tried separately." Id. (citing People v. Fuhrman, 16 Cal. 4th 930, 937-940 (1997)).

Here, the state trial court properly considered Petitioner's four prior strike convictions as separate strikes under California law and did not consider Buford because it was not bound by Buford. Petitioner is not entitled to federal habeas relief on his Buford claim.[1]

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability under 28 U.S.C. § 2253(c) is DENIED because Petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  Nov. 14, 2011

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.10\Grobman, J1.denial.wpd

---

[1] Even if the state trial court had counted three of the four prior strike convictions as one strike, Petitioner would have had two qualifying strikes and been subjected to the same enhanced sentence he received under the Three Strikes Law. See Cal. Penal Code § 667(e)(2).